Wm. Gwynn *vs.* Dorsey, Adm'r of G. Howard of Brice.
*December,* 1832.

An administrator who employs an agent to collect money for the estate un-
der his care, no resort being had to legal process, and the agent being neither
a public officer nor an attorney, is not entitled to charge the estate with
the compensation of such agent.

The Orphans Court have a limited discretion with regard to the amount of
an administrator's commissions, and also as to the time and manner of
making the allowance.

The Orphans Court should aim to make the commissions allowed by them
correspond with the duties performed, and in passing every account should
look to the advance made in the administration of the assetts.

Where an administrator, in the execution of an order for the sale of his in-
testate's estate, took a bond with one surety for $72, which not being paid,
he did not sue until one term after the day of payment of the bond had
passed, but upon obtaining judgment, issued a *fi. fa.* which did not pro-
cure the money, he is not called on to prove the sufficiency of the bond,
to obtain a credit for such sale, nor is the failure to sue at the first term, of
itself an act of negligence.

Where an administrator manifestly intends fairly to do his duty, the rule
should be, not to hold him liable upon slight grounds.

The Orphans Court have the power to make an administrator account for
interest on money belonging to the estate, which he has applied to his own
use, or neglected to distribute and pay over.

Where a sale is made under the authority of the Orphans Court, upon credit,
the purchase money to be on interest until the expiration of the term of
credit, it is not improper in the administrator to receive the money after
the sale, before the expiration of the credit, and thus stop the interest.

An administrator may be held to pay interest, from the time he received
money belonging to his estate, if he applied it to his own use and profit;
and from the end of thirteen months after the date of his letters, if he
kept it by him without any apparent reason, and omits to distribute it
among creditors.

APPEAL from the Orphans Court of *Anne Arundel* County.

A petition was filed by the appellant in this case, on the 10th of January, 1832, which stated that the petitioner, as assignee of one *Benjamin H. Mullikin,* had a large claim against the intestate of the appellee, upon a judgment rendered against him in his life-time, which had been duly proved, passed, and exhibited to the appellee, by whom a part had been paid. That the appellee, under the order of the court, on the 22d of February, 1827, sold the personal estate of the intestate at public sale, which produced the sum of $4288 53. That by the terms of sale, the purchasers for all sums exceeding $20, were to give their notes at six months, with interest from date. That the appellee did not pay to the petitioner any portion of the proceeds of sale, for more than two years thereafter, and that he has not charged himself with the amount of interest received, or that might have been received by him, on the proceeds of the sale. The petition then asks, that the administrator may be required to answer, and give information on all these matters, and that he shall be made to account for interest, on all sums by him received, &c.

The *answer* stated, that at the time of the sale referred to in the petition, the respondent received a letter from the said *B. H. Mullikin,* informing him, that he had recovered a heavy judgment against his intestate, and warning him against paying away the assets, until said judgment should be satisfied. That shortly afterwards, the respondent was notified of the existence of other judgments against his intestate, and that those judgment creditors denied the validity of the claim of *Mullikin,* insisting that it was subject to a large credit, which had not been allowed. The answer then gives a history of the defendant's several settlements in the Orphans Court, and alleges, that in his last and final account, he has charged himself with all the interest he has received.

The following statement of facts was then agreed upon.

It is admitted that the defendant did, on the 30th January, 1827, obtain from the Orphans Court of *Anne Arundel* County, letters of administration on the estate of *George Howard of Brice,* and on the same day obtained from that court, an order to sell his personal estate, on the following terms; cash for all sums less than $20, and a credit of six months, with interest from the purchaser, to be given on bonds, with good and sufficient security, for sums exceeding that amount. That on the 19th of February following, the inventory was returned, and on the 22d of the same month, the account of sales was returned, by which it appeared, that the amount thereof was $4,288 53½, of which $1,144 44½ was received in cash, although there was only $127 85 received from purchasers under $20. That the first account of the administrator was passed on the 9th February, 1828, wherein he is credited with $138 26, for disbursements and costs, leaving a balance due the estate of $4157 68½. That a summons was issued to October term, 1828, for the administrator to appear, and account for the said estate, which was not served. It was renewed to December following, and returned served; whereupon an order was passed, directing the administrator to make distribution of the estate of the intestate, on the 17th January, 1829. That the administrator, on the 21st January, 1829, passed a second account, wherein he is allowed credit for $518 02¾, as disbursements, allowances, and costs, in which is included 10 per cent. commission on the amount of the property, as appraised by the inventory, and five per cent. commission on the debts collected; and is credited in said account with $1,924 47, the balance of cash then in the hands of the administrator agreeably to his statement, distributed among the preferred creditors of the intestate; to wit, three creditors holding judgments against the intestate, amounting to upwards of $33,000, the said *Gwynn's* judgment being about six-sevenths of said judgments. That then the court indulged the administrator in the further distribution

of the estate, till April, 1829; then till August, 1829; then till October, 1829; then till January, 1830; then till February, April, and June following, respectively. That in July, 1830, the said *Gwynn* had the administrator cited to appear before the court in August following, to settle his accounts. That on the return thereof, an attachment issued to December following, which was renewed to February, 1831. That on the 10th February, 1831, the administrator passed a third account, in which he was allowed a credit for some small charges against the estate, and $1682 29, of cash stated to be at that time in his hands for distribution, among the said judgment creditors, leaving a balance due the estate of $42 89. That an attachment issued to October 1831, requiring the administrator to close his administration. That on the 22d May, 1832, the administrator appeared before the Orphans Court, and on the 29th of the same month passed his final account, in which the accountant charges himself with various sums for interest, received from the purchasers at the sale. Among the credits in this account, there is the sum of $17 28, for commission paid by the administrator to *Samuel Brown* for collections. That said *Brown* in not an attorney at law, and that there was produced no proof to show that any of the debts by him collected were by legal process. That credit was also obtained for $79 70, the amount of the purchase, at the said sale made by *Levi Shipley*, for which he gave his bond, with *Edward Shipley* as surety. That said bond, with six months interest thereon, was due on the 22d August, 1827. That suit upon the same, was first brought to April term, 1828, of the *Anne Arundel* County Court, and judgment was obtained thereon, at the April term, 1829. That execution of *fieri facias*, issued upon the judgment, to the October term ensuing. That the sheriff levied on, and sold all the property of *Edward Shipley* under the said execution, and one other execution from the same court, and on various executions on judgments, rendered by justices of the peace, for a sum of money less than the value of the said property,

and which was inadequate to pay the judgments aforesaid. That the sheriff returned the other execution, which issued from the County Court, and upon an admitted statement of facts, the court adjudged the sale to be valid; and the purchase money was so applied, that no part was credited to the judgment obtained as aforesaid, against *Levi* and *Edward Shipley.* That no property was taken under the execution as belonging to *Levi Shipley,* but he is admitted to have been insolvent since. That said *Edward Shipley* was in possession of property on the day of the purchase sufficient to pay all the debts of record against him, and the said bond for the purchase money. That the execution of *Dorsey* against the *Shipleys* has not been returned or renewed, nor has any other execution issued on said judgment. That the sheriff was ruled to return the same, and it has been continued, because no property of the debtors can be found, which might be taken in execution.

Upon this statement of facts, the following questions were submitted to the Orphans Court.

1. Whether, or not, the administrator should be charged with a larger sum for interest?

2. Whether, or not, the administrator should be credited with the $17 28, paid *Brown* for commission.

3. Whether, or not, the administrator should be credited with the bond of *Levi* and *Edward Shipley?*

The Orphans Court decided the three questions in favor of the administrator; and thereupon *Gwynn* prosecuted the present appeal.

The cause came on to be argued before BUCHANAN, Ch. J., EARLE, MARTIN, STEPHEN, and ARCHER, J.

*Randall,* for the appellant.

1. The policy of the law is to compel administrators to settle their accounts speedily, and they should therefore pay interest for every default. When the court directs a sale on a credit, and an executor or administrator, in disobe-

dience of that order, sells for cash, he should be made to account for the interest, which would have accrued on the proceeds of the sale, if the court's order had been complied with. *Ringgold vs. Ringgold*, 1 *Harr. and Gill*, 77. 1 *Brown, Ch. Cas.* 359. 3 *Ib.* 73. He insisted that an administrator should not be allowed his commission until the passage of his final account, as not until then could the court say, how he had discharged his duty, which was the rule by which the court's discretion, within the limits allowed by law was to be determined. 2. The commission paid to *Brown* should not have been allowed. It was not paid for collecting or securing a claim due the deceased, nor was *Brown* an attorney.

3. An administrator is responsible if he fail to take good security for property sold by him. He may not be liable for the eventual responsibility of the names he may take, but he is at all events answerable, if they be insufficient at the time here ceives them, and the *onus* of showing this, is upon him. Now, in this case it does not appear that the *Shipleys* ever were good. Besides, here, the administrator has been guilty of *laches*, in not suing the bond to the first term after it became due. He cited 1 *Harr. and Gill*, 88, and 1 *Jacobs and Walker*, 40.

*Alexander*, for the appellee.

1. There was nothing wrong in the administrator's taking *cash*, instead of notes at the sale, as the object, in ordering a sale on a credit, is not for the sake of the interest which may arise, but for the purpose of exciting competition among the purchasers, and that object is effected by giving them the option to pay cash or not, as may be most convenient to them.

With regard to the allowance of the commission to the administrator, he argued, that was a matter altogether within the discretion of the Orphans Court, whose conduct in this respect, could not be revised here. The same may be said with reference to the commission to *Brown*. This

court cannot review the conduct of the Orphans Court in this respect.

2. There is evidence, that the *Shipleys* were good for the amount of their note, at the time it was given, and it cannot be said, that under the circumstances of this case, the administrator has been guilty of that degree of *laches*, which should render him personally responsible.

EARLE, J., delivered the opinion of the court.

This case presents three questions for consideration. They were decided by the Orphans Court of *Anne Arundel* county, and are brought before us, on the appeal of *William Gwynn*, in a dispute concerning the settlement of the administration accounts of his debtor, *George Howard of Brice*, on whose estate *Roderick Dorsey* administered. The Orphans Court made certain allowances to the administrator, which *William Gwynn* thought objectionable, and refused to make him account for interest, with which it was contended he was chargeable.

In making the allowance to the administrator of $17 28, for so much paid by him to *Samuel Brown, Jr.* for commission on money collected, we think the court erred in judgment. This collection, the administrator ought to have made himself, and should not have burthened the estate with the expense of it. The collector was not a public officer, by the usage of the country entitled to commissions, (if there be any such usage,) nor was resort had to legal process, or the intervention of an attorney at law, to compel the payment. In the last case the expense of the collection may be defrayed by the estate, and we observe that many expenditures of this kind were allowed in the last account passed by this administrator. While on the argument of this question, it was urged by the appellant's counsel, that the administrator's commission was improperly allowed by the court, on passing his second account, and that the allowance ought to have been deferred for the last or final ac-

count. This point is not within either of the three questions decided by the Orphans Court, and perhaps, in strictness, we have nothing to say to it. We have, however, no hesitation in declaring that we do not agree with the counsel on this subject. The Orphans Court have a limited discretion with regard to the amount of the administrator's commission, and no good reason can be assigned why they should not have a like discretion, as to the time and manner of making the allowance. Of course, they would aim to make the commission allowed correspond with the duties performed, and in passing every account, would look to the advance made by the administrator in the administration of the assets, in bestowing on him the reward of his services.

The sum lost by the insolvency of the *Shipleys*, we are of opinion, the court were right in passing to the credit of the administrator, in his last account. It amounted but to seventy-two dollars, and from aught that appears, *Edward Shipley* was fully competent to its discharge, when he entered into the bond with *Levy Shipley*, as his security for the payment of it. Nor was the administrator remiss in using ordinary diligence, for the recovery of this debt after it became due. At the next term but one thereafter, he instituted a suit for it, and in the due course of the courts, obtained a judgment, and issued a *fieri facias*. It was, therefore, not lost by his negligence, unless indeed, passing by one term of the court without suing, is to be taken as an evidence of it. Such strictness, we think, was not required of the administrator; and if this was once pronounced to be the law, we are assured that prudent men, and those most worthy of the office, would seldom be found engaged in the settlement of intestates' estates. Whenever an administrator manifestly intends fairly to do his duty, the rule should be not to hold him liable upon slight grounds.

The question upon the subject of interest is the most important one at present under the review of the court. It is worded thus: Whether or not the administrator should be charged with a larger sum for interest? Before it was sub-

OF MARYLAND. 461

Gwynn vs. Dorsey, adm'r of Howard.—1832.

mitted to the Orphans Court, he had been charged with interest received on the bonds taken for property sold, and as little was said on the argument in relation to this fund, we supposed the appellant to have been satisfied with the adjustment made of it. In his petition, the appellant seems to have had another object in view. He appears to have been in quest of interest on all sums received and misapplied by the administrator, and this demand brings before us a point, now for the first time perhaps, to be settled in this State. It is, how far the Orphans Courts have the power to make an administrator account for interest on money belonging to the estate, which he has applied to his own use, or neglected to distribute and pay over? This is a familiar subject in equity as applied to trusts, and we see no well founded reason why the power should not be exercised in the Orphans Courts, and more especially, since the case of *Hall and Griffith*, decided in this court, (see 2 *Harr. and Johns.* 483,) where an administrator was made to account in the Orphans Court of *Harford* county, for the labor of negroes belonging to the estate of his intestate, which he employed in his own service, and for his own purposes. If this authority is with the Orphans Court of *Anne Arundel* county, a further inquiry is, whether it ought to have been exerted in calling this administrator to account for interest on the money of the estate he unreasonably held in his hands, or applied to his own use, and we clearly and decidedly think it ought. There is but little testimony in the case, and that little not very explicit; yet we are of opinion, there are sufficient grounds established on which to call *Roderick Dorsey* to account for some interest. Had he fully answered the demands of the petition, he would have disclosed the sums he received of the purchasers of the property, sold under the order of the court, and the periods at which they were respectively received; but as this is not done, there is evidence only in the case to make him account for interest, for a part of the $1144 44½ he received at the time of the sale. We do not, with the counsel, blame him for receiving this

money of the purchasers, who were prepared to pay, rather than give bond with security; for in this he was certainly right. The object of the Orphans Court, in ordering the sale of the property of the deceased, is to convert it into money as expeditiously as is consistent with an advantageous sale. All the benefits contemplated by a credit sale, were obtained by the administrator in this case, and, therefore, we sustain his conduct. But in this decision, we wish to be distinctly understood as confining it to sales made under the authority of the Orphans Court. His imputed fault is, in holding the money in his hands, or in applying it to his own purposes.

His second account was passed the 21st January, 1829, and his commission, disbursement, and other expenses, allowed to that time, amounted only to $656 28½, which demonstrates that there remained in his hands for nearly two years, the sum of $488 15¾. On this sum he ought to be. held to account for interest, from the time he received it, if he applied it to his own use and profit, and from the end of thirteen months after the date of his letters, if he kept it by him without any apparent reason, and omitted to make distribution of it, as he ought to have done among the creditors. This they were entitled to have. made within that time, by the act of 1798, *ch.* 101, *sub-ch.* 8, *sec.* 14, and if they were disappointed in the receipt of their dividends, by his culpable inattention to duty, it is but just that he should be charged with interest lost to them by his neglect. The order for the distribution on the 17th January, 1829, was not passed, as intimated, on the 8th of February preceding, and furnishes no excuse for the delay, and the controversy among the creditors was no impediment to it, as the administrator might have retained the disputed dividend, or a portion of it, under the direction of the Orphans Court.

The decision of the Orphans Court of *Anne Arundel* county in this case is reversed; and we direct the proceedings to be returned to that tribunal, that on the principles herein set forth, justice may be done to the parties.

**DECREE REVERSED.**