SAMUEL D. BRADY *vs.* JOSEPH DILLEY AND JOHN T.
GREENWADE. JOSEPH. DILLEY AND JOHN T. GREEN-
WADE *vs.* SAMUEL D. BRADY.

*Attorney's Fees—Trustee's Expenses—Trustee's Commissions
—Appeal—Construction of Deeds—Marshalling of Assets.*

Where by the terms of a Deed of Trust the trustee was to be allowed for
"all just and reasonable expenses, costs, charges and commissions at-
tending the due execution of" the trust. HELD:

That the trustee is entitled to be allowed attorney's fees paid his counsel,
where it appears that the fees were fair and reasonable, and that the ser-
vices rendered, were indispensable to the trustee in the proper execution
of his trust.

Where expenses are incurred by the trustee, in an unsuccessful attempt to
establish a claim of his own against the trust fund, and the claim ap-
pears to have been asserted honestly and in good faith, the allowance
or rejection of the costs thereby incurred are in the discretion of the
Court below.

Where a trust deed allows the trustee commissions not exceeding ten per
cent., the amount to be allowed him within that limit, is a matter resting
in the discretion of the Court below, and is not a subject for appeal.
And if it were open for examination on appeal, it would be presumed
in the absence of proof to the contrary, that the Court below decided
correctly.

On the 17th of June, 1856, J. T. G. executed a mortgage to S. D. B. and
three others, conveying to them all his real estate and *two negro boys,
Jim and Bill,* as an indemnity to them and to secure them against any
loss they might sustain by reason of their having become his sureties on
two bonds as recited in said mortgage. Afterwards he sold the two
boys, *Jim and Bill,* to S. D. B. for a valuable consideration, and delivered
possession of them to him. Subsequently to the sale, on the 17th of ·
January, 1860, he executed a deed of trust, for the benefit of his creditors,
to S. D. B., of "all and singular the lands, tenements and hereditaments,
real estate and chattels real of the party of the first part; and also all
the personal property, chattels and effects belonging to the said party of
the first part—a particular description of which will be found in a mort-
gage executed," &c.; by which deed of trust he gave a preference to the
claims against which said mortgage was intended as an indemnity. Upon
application of one of his general creditors to compel the trustee to ac-
count for the two negro boys, *Jim and Bill,* as part of the trust assets, or

else to have the assets marshalled as against the preferred claims above mentioned.   HELD :

1st. That the negro boys did not pass under the deed of trust as part of the trust property.

2d. That the facts did not present a case for the marshalling of assets.

CROSS APPEALS from the Equity side of the Circuit Court for Allegany County.

On the 17th of June, 1856, John T. Greenwade executed a mortgage to Charles Ridgely, Moses T. Greenwade, George C. Perry and Samuel D. Brady, conveying to them all his real estate, and *two negro boys, Jim and Bill,* as an indemnity to them, and to secure them against any loss they might sustain by reason of their having become his sureties on two bonds, as recited in said mortgage.   One of the bonds was a guardian's bond, given by said John T. Greenwade for $1,600, as guardian of S. Virginia Greenwade and Mary Margaret Greenwade, in which all four were sureties ; and the other was a bond given by John T. Greenwade, as committee of Charity Greenwade, a lunatic, for $10,000, in which Brady and Moses T. Greenwade only were the securities.   On the 17th of January, 1860, the said John T. Greenwade, being largely indebted, executed a deed of trust to Samuel D. Brady conveying to him " all and singular the lands, tenements and hereditaments, real estate and chattels real of the said party of the first part, *and also all the personal property, chattels and effects belonging to the said party of the first part,* a particular description of which was to be found in a mortgage executed by the said John T. Grenwade, to Moses Greenwade, Charles Ridgely, George C. Perry and Samuel D. Brady, on the 17th day of June, 1856, recorded," &c.; " and also all and singular the debts, sums of money, balances of accounts, promissory notes, bills of exchange, bonds, judgments and other securities, claims and demands then belonging, due or payable, or to become due or payable, to

the said party of the first part;" *in trust* that the said party of the second part should take possession of the property thereby assigned, and sell and dispose of the same at public or private sale as he might deem most beneficial to the interest of the creditors of the grantor ; and out of the proceeds of such sales and collections " should first *pay and discharge all the just and reasonable expenses, costs, charges and commissions attending the due execution of the deed presents and carrying into effect the trusts thereby created, together with a reasonable and lawful compensation or commission, not exceeding ten per cent., for his own services,"* and out of the residue should pay :

1st. All and singular the debts or amounts due by the party of the first part, as guardian of S. Virginia Greenwade and Margaret H. Greenwade, and also all sums due by him as trustee of Charity Greenwade, a lunatic, which said debts were to be paid in full, and were thereby preferred.

2d. All lawful debts due and owing by the grantor, of every kind and description ; and

3d. To pay the balance, if any, to the grantor, his executors, administrators or assigns.

The trustee under this deed of trust filed reports of his proceedings in the Circuit Court for Allegany County, and upon the proceedings in that case the questions presented by these appeals arise.

The facts of the case are sufficiently stated in the opinion of the Court.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*Oliver Miller* for *Samuel D. Brady :*

The law is clear that wherever a trustee finds it necessary to employ counsel for the proper management of the estate, he will be allowed such reasonable fees as he may

pay.   *Green vs. Putney,* 1 *Md. Ch. Dec.,* 262 ; *Laroque vs. Candolle,* 4 *Md. Ch. Dec.,* 347.

The case in 7 *Md. Rep.,* 345, is in no manner inconsistent with the decisions of Chancellor Johnson.   In that case the Court decide that an allowance of five per cent. was not a proper allowance in case of a re-sale, because it was more than the commissions of the Chancery sale, and the trustee making the re-sale was not to be considered in the light of a solicitor or attorney who collected the money by suit on bonds, but if he had brought suit on the bonds he would have been entitled to five per cent. commissions as attorney.   It is therefore submitted there was no error in allowing these items.

Dilley also excepts to the allowance of eight per cent. commissions to the trustee, upon the ground that this is more than a reasonable allowance in view of the difficulties that have occurred in the settlement of a final account, caused by the conduct of Brady.   There is no proof, whatever, that Brady has been guilty of any misconduct or unreasonable delay in the settlement of this difficult and complicated trust.   By the terms of the deed he was authorized to sell the property at public or private sale, as he might deem most beneficial to the interest of the creditors.   There is no proof or even allegation that he did not effect the sales promptly, and upon the most advantageous terms.   The record shows he paid many and large amounts of debts out of his own pocket, before he had realized the proceeds of sale.   The deed contemplated that an allowance of *ten per cent.* commissions might be proper, as it limits them to that amount. *Eight per cent.* was allowed according to the established practice in the Court below, in analogy to the allowance made to trustees under the insolvent laws, the duties of such trustees being similar in all respects to those of the trustee in this case.   There is not a particle of evidence in the record to show that eight per cent. was too much,

and in the absence of evidence this Court will assume that the Court below acted correctly in allowing it.   The testamentary law fixes the minimum and maximum allowance of commissions to executors and administrators, and where an allowance has been made by the proper tribunal within these limits, no appeal will lie from their action in this respect.   *Wilson vs. Wilson,* 3 *G. & J.,* 20 ; *Gwynn vs. Dorsey,* 4 *G. & J.,* 453.

The same rule should be applied to this case.   How much he should receive not exceeding the ten per cent. limited in the deed, is a matter resting in the sound discretion of the Court below, and not the subject of an appeal.   It is submitted, therefore, that the decision as to the *amount or rate* of commissions to be allowed the trustee upon the property which he received, or was properly chargeable with under the deed of trust, was correct.

Dilley also excepts to the allowance of auditor's fees in the ratified audit, because they include fees charged for taking testimony to prove Brady's ownership of Walnut Island.   Exceptions to auditor's fees incurred under the circumstances would seem to be a very small matter, even if the fees for taking testimony as to the title to the island, could be (as they cannot) segregated from the rest, and it should be conceded that Brady had no right to litigate that question in this case.   But it is insisted he had a perfect right to set up his claim to the proceeds of the sale of this island, inadvertently, as he in good faith asserted, sold by him as the property of Greenwade.

We come now to the main question in the case.   The judge below, for the extraordinary reasons given in his opinion, decided that Brady was liable for, and should be charged with the value of the two negroes.   These negroes had been sold and delivered by Greenwade to Brady, one of them more than two years, and the other

more than eight months, before the deed of trust was executed. Brady bought them, took immediate possession of them, paid for them and took a warranty of title for them. Yet it is contended that in this case, in which Brady as trustee, and Dilley and Greenwade are the sole parties—a case in which the trust funds received under this deed of trust alone are to be distributed—a case in which the mortgagees to whom the negroes were mortgaged are no parties, and are making no complaint, their debts being all paid off—Brady is to be held liable for the value of these negroes. We say he is not so liable, and shall insist that by the true construction of the deed of trust, these negroes are not conveyed thereby. It appears from the proceedings in the case, that at the date of the deed of trust, Greenwade owned very considerable personal property, household and kitchen furniture, farming utensils, cattle, horses and stock of all kinds. These *belonged* to him at the date of the deed of trust. The negroes did not belong to him at that time. He had long previously sold them in the most solemn form, and parted with possession of them. To construe the words of the deed as applying to these negroes, would be to declare that no personal property was conveyed by the deed of trust, except the negroes, because the negroes are the only personal property mentioned in the mortgage. It would be equivalent to saying, directly contrary to the facts of the case, that the words, "all the personal property, chattels and effects belonging to me," meant only the personal property described in the mortgage, and would be, in effect, taking out of the deed all the personal property which did belong to Greenwade, and placing in its stead the negroes which did not belong to him. Upon the facts of the case now appearing before the Court, according to the construction contended for on the other side, these two clauses are entirely irreconcilable and inconsistent. All the personal property belonging to

Greenwade was not that which was described in the mortgage, and that described in the mortgage was no part of the personal property then belonging to him. If the negroes are to be embraced in the deed, then it should have conveyed all the personal property belonging to me, and also that which is particularly described in the mortgage. For the rules of construction applicable, see 4 *Cruise,* 257, 259. It was manifestly Greenwade's intention to convey by the deed of trust *all* the *personal property* belonging to him. This distinctly appears upon the face of the deed by the words, "all the personal property, chattels and effects belonging to me." The presumption of the law is, that a party knows what he owns, and only intends to convey what he does own. Reliance may, as it was in the Court below, be placed upon the grammatical construction of the two clauses, and it may be as it has been said, that the relative pronoun "which," refers for its antecedent to the last mentioned subject, and that the latter clause "which is particularly described in the mortgage," &c., must be applied to the last preceding clause, "all the personal property, chattels and effects belonging to me," notwithstanding the evidence in the cause that the property described in the mortgage did not belong to Greenwade, and that there was a very large amount of personal property covered by the words, "all the personal property belonging to me," which did belong to Greenwade, and which has been sold and reported by the trustee, and is included in the audit for distribution. To this argument the maxim "*mala grammatica non vitiat chartam,*" applies. But if the reference to the mortgage is applied to the real estate, it becomes at once sensible and explicit, because in the mortgage the real estate was described with great particularity and certainty, but in the deed of trust in the most general terms.

Again, as before stated, the subsequent words, as

applied to the conveyance of the personal property, would defeat the effect of the precedent words, and would substitute the negroes alone, as they are the only personal property mentioned in the mortgage, for all the personal property which belonged to Greenwade. Now the rule in the construction of deeds is, that where there are two clauses in a deed, of which the latter is contradictory of the former, there the former shall stand. 4 *Cruise,* 257. (293 *Lib. Edn.*)

Then as to marshalling of assets :—there are no parties to this proceeding except Brady on the one side and Dilley and Greenwade on the other. When the sale of the negroes was made, Dilley had no lien on them. His first judgment was not recovered until April 11th, 1859, after the sale of one of the negroes, and this judgment is paid in full by the audit, without resort to the negroes. His second judgment was not recovered until January 26th, 1860, after the sale of both negroes, and this also is paid nearly in full by the audit, without resort to the negroes. His other claims are on single bills, none of which fell due prior to April 1st, 1860. He was therefore a mere creditor without lien, when the negroes were sold. But even if these judgment debts were neither of them paid by the audit, their existence could not defeat the sale of the negroes by Greenwade to Brady. There is no pretence that it was a fraudulent sale ; full price was given, and Greenwade was thereby rendered none the less able to pay his debts. But even if Dilley had a lien, and that was a case for marshalling assets, the Court would not marshall the assets to the detriment of a purchaser *bona fide* and without notice. *Cheesbrough vs. Millard,* 1 *Johns. Ch. Rep.,* 409 ; 2 *Lead. Cases in Equity,* 216, 217, 238, *top ; Gill vs. Lyon et al.,* 1 *Johns. Ch. Rep.,* 447.

A purchaser for value is always preferred to a creditor. A judgment creditor takes his judgment upon land, subject to all the equities created by the debtor prior to the

date of the judgment, though private and unknown to him. *Alexander vs. Ghiselin*, 5 *Gill*, 138.

Brady is a purchaser for a valuable consideration, and Dilley is a mere judgment creditor, having no lien on the personal property.

The sales in this case were made by Brady, under the deed of trust—the advertisements so state—Dilley purchased all the real estate under the deed of trust—the trustee made his report under the deed of trust, and the proceeds are now in Court for distribution under the deed of trust. No question can arise here upon the mortgage, for there is nobody before the Court claiming under the mortgage. Brady having accepted the deed of trust and acted under it, could not set up the mortgage, or interfere with the title of the purchasers thereunder. The Court in distributing the proceeds of sale made under the deed of trust, cannot undertake to make distribution to the mortgagees, the sales having been ratified under the deed of trust, and the mortgagees not being in Court claiming under the mortgage. There can be no doubt of the right of the mortgagor to sell the mortgaged property, and the only matter that the purchaser need look to, is the mortgage debt. No subsequent creditor has a right to interfere with the purchaser, and even no existing creditor, unless he has acquired a lien on the property. It is an every day occurrence to sell mortgaged property. The Court will never marshall assets where the rights of third persons intervene. 1 *Lead. Cases in Equity*, 216, 217 ; *Gill vs. Lyon et al.*, 1 *Johns. Ch. Rep.*, 446.

Dilley having purchased under the deed of trust is estopped to deny that the sale was made, the title passed, and that the proceeds must be distributed, under the deed of trust. Even if he had a mortgage on a portion of the property, upon a part of the mortgaged premises, prior in date to the execution of the deed of trust, he could not claim under the mortgage, but must claim under the deed of trust. *Doub vs. Barnes et al.*, 4 *Gill* 1, 19.

Marshalling will take place where the parties are in life, only where both parties have liens, and the one has security on two funds and the other only on one. If the party having the two funds gives up the one before the party who has but one gives him notice of his claim, and the equity which he expects, then the marshalling will not take place. *Gill vs. Lyon,* 1 *Johns. Ch. Rep.,* 447.

It is therefore confidently submitted, that upon no ground whatever can Brady be held liable for the value of these negroes.

*J. H. Gordon,* for *Dilley & Greenwade.*

Is Brady chargeable with the slaves Bill and Jim? These slaves are conveyed to Brady, Ridgely, Perry and Moses Greenwade, by the mortgage, and they hold the legal title in them, subject to the rights of the grantor to redeem them. *Jamieson vs. Bruce,* 6 *Gill & John.,* 74; *Leighton vs. Preston and Hepburn,* 9 *Gill,* 201.

Brady got possession of the negroes in 1857 and 1859, and was then a tenant in common with the other mortgagees, holding the negroes for the joint benefit of all the mortgagees, as shown by authorities hereafter cited. On the 17th January, 1860, John T. Greenwade, by deed of trust, conveyed to Brady, "*all the personal* property, chattels and effects belonging to said party of the first part,— a particular description of which will be found in a mortgage executed by John T. Greenwade to Moses Greenwade, Charles Ridgely, George C. Perry and Samuel D. Brady, on the 17th June, 1856." And by turning to the mortgage you find there was no personal property described in it, but the two negroes Jim and Bill. Brady therefore took the said negroes under the deed of trust, subject to all its provisions. The deed provides for the sale of all the property, and the collection of all the debts. The proceeds to be applied first to the payment of all the debts due by John T. Greenwade as guardian of Virginia Greenwade

and Margaret Greenwade, and all sums due as trustee of Charity Greenwade, a lunatic, which said debts are preferred.

These are the same debts secured by the mortgage. The deed then provides for the payment of all other debts of John T. Greenwade. It is contended, however, that Brady bought the negroes from the mortgagor in 1857 and 1859, before the deed of trust was made. But Greenwade, the mortgagor, had no interest in them, except the equity of redemption. *Gassaway vs. Dorsey,* 4 *H. & McH.,* 405 ; *Leighton vs. Preston and Hepburn,* 9 *Gill,* 201 ; *Jamieson vs. Bruce,* 6 *G. & J.,* 74.

And if he took them into his possession, he being a joint mortgagee, his possession was the possession of all the mortgagees, and for their benefit. 2 *Hilliard on Torts,* 277 *to* 281 ; *Jones vs. Brown,* 38 *Eng. L. & Eq.,* 304; *Campbell vs. Campbell,* 2 *Murphey,* 65 ; *Bonner vs. Latham,* 1 *Iredell,* 275 ; *Foster vs. Crabb,* 11 *Eng. Law & Eq.,* 521 ; *Carr vs. Dodge,* 40 *New H.,* 403.

The case presents the following facts :

Brady received the negroes as one of the joint mortgagees,—held them till the deed of trust was made, 17th January, 1860. They took them and all the other property under the deed, with power to sell and apply the proceeds. Dilley recovered a judgment at April Term, 1859, for $2,000, which was a lien upon the real estate. He also recovered another judgment at June Term, 1860, for $710, which was also a lien. He held notes to the amount of $5,000, making his claim $7,710.

Brady sold all the property except the negroes, and brought the proceeds into Court for distribution, and the question now is, whether he shall be permitted as the agent and manager for himself and his co-mortgagees, to apply a sufficient amount of the proceeds of the real estate to the payment of the claims provided for in the mortgage, and preferred by the deed of trust, and refuse

to account for the negroes, leaving Dilley without redress to that extent, or whether Dilley shall be entitled to the value of the negroes upon the principle of subrogation. If the negroes had not been included in the deed of trust, there might be a question about the propriety of marshalling the assets, and restraining the mortgagees from applying the proceeds of the other property to payment of the claims secured by the mortgage until they have exhausted their remedy against the negroes, and made all out of them that was possible, and if such restraint would not be applied, the Court would at least require the mortgagees to produce the negroes, and permit the other creditors, whether by lien or simple contract, to get the benefit of them by subrogation. *Aldrick vs. Cooper*, 2 *Lead. Cas. in Eq.*, 175, 229, 230, 231, &c.; *Fulton et al. vs. Nicholson et al.*, 7 *Md. Rep.*, 104; *Reigle vs. Leiter et al.*, 8 *Md. Rep.*, 405; *Gibson et al. vs. McCormick*, 10 *G. & J.*, 107; *Averill vs. Loucks*, 6 *Barbour*, 470.

But here the joint mortgagee having the negroes in possession, becomes a trustee or agent for the other mortgagees, by virtue of his possession. And then he takes a deed of trust, which conveys the negroes and all the other property to him, with full power to sell and apply the proceeds. The only question, therefore, is, whether he should be required to account for all the property which came to his possession under the deed of trust? and about that there can be no doubt. I think the trustee's commissions should be reduced to the minimum sum of five per cent., because his conduct in claiming the Island, and in refusing to account for the negroes, has caused great delay in closing up the business. He should also be required to pay the costs attending the claim made for the island. And there is no just ground for the allowance of fees to his attorney. *Farmers' and Planters' Bank vs. Martin and Travers*, 7 *Md. Rep.*, 345.

BARTOL, J., delivered the opinion of this Court.

These appeals bring before us for review, several exceptions taken by the parties respectively, to the report and account of the auditor, made on the 13th of July, 1865, in the matter of the deed of trust from John T. Greenwade to Samuel Brady, and ratified by the Circuit Court for Allegany County on the 3d day of August, 1865. The exceptions of Dilley will be first considered.

1st. The allowance to Brady of $20, and $150 attorney's fees paid G. A. Pearre, Esq. The testimony of Mr. Pearre proves that these fees were fair and reasonable, and that the services were indispensable to the trustee, in the proper discharge of his trust. By the terms of the deed creating the trust, Brady was entitled to be allowed for "all just and reasonable expenses, costs, charges and commissions," attending the due execution of the trust, "together with a reasonable and lawful compensation or commission, not exceeding ten per cent., for his own services." "Such allowances," as was said by Chancellor Johnson in *Green vs. Putney*, "should the nature of the trust and the circumstances of the case require it, will embrace, even without an express provision, the expense of employing an attorney." 1 *Md. Ch. Dec.*, 267, and cases there cited; 4 *Md. Ch. Dec.*, 347, *Laroque vs. Candole*. In our opinion the attorney's fees in this case were properly allowed.

2d. The allowance for auditor's fees charged for taking testimony to prove Brady's claim to "Walnut Island." This claim was unsuccessfully asserted, and the objection is that these costs ought to be paid by Brady. In examining the fees charged by the auditor for the various audits made by him in the progress of the cause, we find it impossible to discover the amount covered by this exception; it is nowhere stated as a separate item; and, judging from the aggregate amounts of fees charged by the auditor, this particular part of the cost must be very

inconsiderable. In our opinion, however, the dispute in regard to the Island was made by Brady honestly and in good faith, and although he failed in establishing his claim, the costs thereby incurred were within the discretion of the Circuit Court to award for him or against him, and that Court having allowed them to Brady, with the other auditor's fees, we think there is no good reason for reversing its decision in this respect.

3. The only remaining exception taken by Dilley to the audit, is to the allowance of eight per cent. commissions to the trustee. Under the decisions in *Wilson vs. Wilson*, 3 *G. & J.*, 20, and *Gwynn vs. Dorsey*, 4 *G. & J.*, 453, we think this allowance was a matter resting in the discretion of the Circuit Court, and not a subject for appeal. But if it were open for examination here, it would be presumed, in the absence of proof to the contrary, that the Court below decided correctly. We may add further, that by the terms of the deed the commissions are limited to ten per cent. The Circuit Court did not allow the *maximum* rate fixed by the deed, and considering the nature of the trustee's duties, and the manner in which he appears to have performed them, we have discovered no reasons disclosed by the record to show that the allowance of eight per cent. was unreasonable.

We now proceed to the examination of Brady's exceptions. The 1st, 2d, 3d and 4th exceptions are to the charges of interest on the notes taken by him to secure the deferred payments. He is charged with principal and interest to the time of the audit, although the notes had not then matured, by which means it is objected he loses the interest on the amounts of interest so charged. But that mode of calculation was assented to by him. In the instructions given by his solicitor to the auditor, the latter is directed " to charge interest up to the date of the audit, and state that the trustee is willing to treat the same as

cash as of the date of the audit." The point presented by the second exception is somewhat different; there the objection is that he is charged interest on the first credit instalment of the third sale to the date of the audit, 12th July, 1865, whereas it matured on the 17th October, 1864, about nine months before. But this is sanctioned by the consent and agreement of Brady, as evidenced by the instructions given to the auditor above cited. Besides, it does not appear that the instalment was actually received by him at maturity, and if it remained unpaid he would be entitled to collect the interest thereon to the time of its payment, and would be held to account for such interest. In respect to these items of interest charged to the trustee in the auditor's account, there is evidence that the mode of calculation adopted by the auditor was consented to by Brady in order to facilitate a settlement, and his exceptions thereto were properly overruled. The 5th and 6th exceptions will be considered hereafter. The 7th exception, which refers to Brady's claim to the Island mentioned in the proceedings, has been properly abandoned by his counsel in this Court, and is not supported by the evidence in the cause. The 8th exception is based upon a claim for interest on moneys which the trustee is alleged to have paid and advanced from time to time in excess of his actual receipts, and is stated by his counsel in his brief to be at least $94.69. But it has not been shown in what manner this sum is ascertained. Looking at the mode in which the interest has been estimated by the auditor, we think the trustee has no just ground of exception to the account in that respect. The 9th and 10th exceptions taken to the allowances to Dilley on his judgment claims, have not been insisted on in the argument. The main question in the case arises upon the 5th and 6th exceptions. These refer to the two items of $1467.50 and $1644, with which the trustee is charged, as the proceeds with interest thereon of the sales of two negroes " Jim and Bill." The ground

of this exception is, that these sums are " not chargeable to Brady under the deed of trust, he having purchased and paid for the negroes long prior to its execution."

The question whether Brady is properly chargeable in this account with the negroes or their value, seems to us to turn necessarily upon the true construction of the deed of trust.   Unless this property passed to the trustee under that deed, and was received and accepted by him as part of the trust estate, he would not be chargeable with it, in the account of this trust.   It appears that on the 17th day of June, 1856, John J. Greenwade executed a mortgage conveying to Charles Ridgely, Moses T. Greenwade, George C. Perry and Samuel Brady, several tracts and parcels of land particularly therein described, for the purpose of indemnifying and saving harmless from loss the mortgagees who, according to the recitals in the mortgage, were bound as his sureties in large penal bonds conditioned for the faithful performance by him of trusts reposed in him as trustee and committee of Charity Greenwade, a lunatic, and as guardian of Virginia Greenwade and Mary Margaret Greenwade, infants.   The mortgage, after a full and particular description of the lands intended to be conveyed, contains this clause, " And as a further security to the said parties of the second part, and in consideration of the premises, the said John T. Greenwade doth hereby bargain and sell to the said parties of the second part the following property or personal estate, to wit : his negro slave 'Jim,' aged about 17 years, and his negro slave 'Bill,' about 13 years of age."   On the 15th day of September, 1857, John T. Greenwade sold to Samuel D. Brady negro "Jim," for one thousand dollars, and on the 2d day of May, 1859, negro "Bill," for twelve hundred dollars.   These sales are evidenced by two receipts of the respective dates above mentioned, signed by John T. Greenwade, acknowledging the receipt of the purchase money and warranting the title.   It is admitted that

Brady "received the possession of the negro boys *at* the respective dates of the receipts." On the 17th day of January, 1860, John T. Greenwade executed the deed of trust conveying to Samuel D. Brady in trust for the purposes therein named, " All and singular the lands, tenements and hereditaments, real estate and chattels real of the party of the first part, and also all the personal property, chattels and effects belonging to the said party of the first part,—a particular description of which will be found in a mortgage executed by the said John T. Greenwade," (then follows a particular reference to the mortgage of the 17th of June, 1856, " and also all and singular the debts, sums of money, balances of accounts, promissory notes, bills of exchange, bonds, judgments and other securities, claims and demands now belonging, due or payable, or to become due or payable to the said party of the first part." Did the negroes " Jim " and " Bill " pass to Brady, the trustee under this deed, as part of the trust property? At the time it was executed John T. Greenwade had no right or title in them, having long before sold them for a valuable consideration to Brady, and delivered to him the possession. There is no evidence in the record to impeach the *bona fides* of that sale.

How then can the deed of trust be construed as operating to convey them? It could convey, and professed to convey only " the personal property, chattels and effects belonging to Greenwade ;" these negroes did not belong to him. If the sales of the negroes in September, 1857, and May, 1859, had been made to a third person, it could hardly be successfully contended that the trustee would have a right to claim them under the deed of trust subsequently executed. How then can the acceptance of the deed of trust by Brady operate to divest him of his title acquired under his previous purchase? unless upon some principle of estoppel, we are to say that he took the negroes under the deed of trust, and is thereby estopped from setting up a title in himself.

But this would be contrary to the manifest intention of the parties and the admitted facts of the case.  He held the negroes as a *bona fide* purchaser for value, before the deed of trust was executed ;  did not take them under the deed or accept or hold them as trustee.  The whole argument of Dilley's counsel upon the construction of the deed rests upon the words referring to the mortgage for the description of the property conveyed, without adverting to the fact that to apply those words to the personal property would limit the operation of the deed, so far as personal chattels are concerned, to a conveyance of the negroes alone, for no other personal property is named in the mortgage except the negroes ;  whereas the intention of the instrument, as expressed on its face, was to convey all the grantor's personal property of every kind.  According to our construction of the deed, the negroes did not pass under it to Brady as part of the trust property, Greenwade having before sold and delivered them to Brady.

It is contended, however, that under all the facts and circumstances of this case, Dilley, as a creditor of Greenwade, is entitled to claim that the negroes shall be accounted for under the trust, and applied towards the payment of the debts secured by the deed.  If they had come into his possession under the deed of trust, it is of course very clear that he would be bound, as trustee, to account for them ;  but it is not easy to see upon what equitable principles Dilley can claim that he is bound to account, as trustee, for property which he did not take under the deed of trust, but held as a *bona fide* purchaser before the deed was executed.  This claim is supposed to rest upon an equitable right of Dilley to have a marshalling of all the assets of Greenwade, including the negroes.  It seems to us that the rules by which Courts of Equity are governed in allowing the marshalling of assets among creditors, are inapplicable to the present

case.  Dilley was a mere general creditor of Greenwade, having no lien on the negroes at the time they were sold to Brady, he is therefore not in a position to question Brady's title under his purchase.  He comes in under the deed of trust, claims under the deed, and can claim as against Brady, the trustee, only in respect to the trust fund conveyed by the deed.

It is a mistake to suppose that after his purchase of the equity of redemption, Brady held the property as mortgagee or for his co-mortgagees ; he held it subject to the rights of his co-mortgagees under the mortgage ; but they are not here asserting those rights ; so far as appears from the record, they acquiesced in the sale of the negroes to Brady, and have come in under the deed, elected to take according to its provisions, and rely for their security on the trust fund thereby created.  There is no principle of equity upon which Dilley can question their rights under the deed, or require either that the negroes be applied to the payment of their claims, or be brought into the trust.  He had no lien upon them at the time they were sold to Brady.  The principle of marshalling assets does not apply; to enforce it here would be to work injustice by taking the property of a *bona fide* purchaser, to pay a debt for which neither he nor the property was liable.  We have examined the authorities cited, and have found no case that supports the proposition here contended for on behalf of Dilley.  Considering the question with regard to the marshalling of assets a plain one as presented in this case, we have not thought it necessary to cite the authorities at length.  The cases of *Cheesbrough vs. Millard,* 1 *Johns. Ch. Rep.,* 409, and *Gill vs. Lyon, ib.* 447, support the views we have expressed, and we refer to Chancellor Kent's opinions in those cases as illustrating the principles governing the subject of marshalling assets by Courts of Equity ; and also to 2 *Leading Cases in Equity,* 216, 217, 238.  Being of

opinion that the exceptions of Joseph Dilley were properly overruled, we affirm on the appeal of Dilley and Greenwade. On the appeal of Brady we affirm the ruling of the Circuit Court on all the exceptions except the fifth and sixth, and reverse upon them. A decree will be signed reversing the order of the Circuit Court, so far as the fifth and sixth exceptions of Brady are concerned, and remanding the cause, that an account may be stated and further proceedings had in conformity with the opinion of this Court. The costs of these appeals to be paid out of the trust fund.

*Reversed and remanded.*

(Decided 19th July, 1867.)